IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>TEAM FINANCIAL, INC.,<br>            *Debtor.* | Case No. 09-10925<br>Chapter 11 |
| IN RE:<br><br>TEAM FINANCIAL ACQUISITION SUBSIDIARY, INC.,<br>            *Debtor.* | Case No. 09-10926<br>Chapter 11 |
| IN RE:<br><br>POST BANCORP, INC.,<br>            *Debtor.* | Case No. 09-10927<br>Chapter 11 |
| TEAM FINANCIAL, INC., TEAM FINANCIAL ACQUISITION SUBSIDIARY, INC., and POST BANCORP, INC.,<br>            *Plaintiffs,*<br>v.<br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br>            *Defendant.* | Adv. Case No. 09 _____<br><br><br><br><br>**FILED ELECTRONICALLY** |

**DEBTORS' COMPLAINT FOR TURNOVER OF PROPERTY OF
THE ESTATE HELD BY FDIC AS RECEIVER AND FOR SANCTIONS
FOR VIOLATION OF THE AUTOMATIC STAY**

The captioned debtors assert the following claims for relief against the captioned defendant:

1.      Each of the debtors captioned above filed their separate petitions for relief on April 5, 2009 (the "Filing Date"), in the U.S. Bankruptcy Court for the District of Kansas, Wichita Division.

2.      The cases are presently pending before this Court, this claim arises in the captioned bankruptcies and the debtors are in possession of their assets. This action is brought as an adversary proceeding as required by Bankruptcy Rule 7001(1) and (7). This Court has jurisdiction pursuant to

28 U.S.C. §1334(b) and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (E).

3. The defendant is a United States Corporation and can be served as required by F.R.C.P. 4(i)(1) and (2).

4. The plaintiffs/debtors in this case are bank holding companies that hold, either directly or indirectly, the stock in two banks, TeamBank, N.A. ("TeamBank") and Colorado National Bank.

5. On March 20, 2009, TeamBank was closed by the United States Comptroller of the Currency and the FDIC was appointed receiver of TeamBank's assets. The FDIC took control of TeamBank's business operations and all of its assets on March 20, 2009.

6. On January 2, 2008, the plaintiffs/debtors, TeamBank, and other affiliated entities entered into an agreement entitled "Tax Allocation Agreement." A true and correct copy of the Tax Allocation Agreement ("Agreement") is attached as Exhibit 1 and made a part hereof.

7. Concurrently with the filing of this adversary complaint, the debtors have filed a motion under 11 U.S.C. §365 to assume the Agreement.

8. On May 7, 2009, each of the plaintiffs/debtors herein received a letter from James A. Meyer, the Receiver in Charge for the FDIC, indicating that the FDIC intended to "repudiate," pursuant to 12 U.S.C. §1821(e), the Agreement made by TeamBank, the plaintiffs/debtors herein, and the affiliated entities (the "Repudiation Letters.") True and correct copies of the Repudiation Letters are attached as Exhibit 2 and made a part hereof.

9. The Agreement and the anticipated tax refunds to be received pursuant to the terms of the Agreement constitute assets of the bankruptcy estates pursuant to 11 U.S.C. §541.

10. The consolidated tax return, which is the subject of the Agreement, is presently estimated to provide for tax refunds to exceed $1,000,000.00.

### COUNT I: CLAIM FOR TURNOVER BY CUSTODIAN

11. The allegations made in paragraphs 1 through 10, above, are alleged herein again as if fully set forth.

12. As of the Filing Date, the defendant, as the receiver for a party to the Agreement, was a custodian of property of the debtors with knowledge of the commencement of these cases under Title 11 of the United States Code.

13. Pursuant to 11 U.S.C. §543(b)(1), the FDIC, as receiver, is required to turnover to the debtors-in-possession all property of the debtors held by the FDIC and their proceeds.

14. By seeking to repudiate TeamBank's interest in the Agreement, the FDIC seeks to take possession of a portion of the tax refund that would otherwise be paid pursuant to the Agreement and be property of the bankruptcy estates.

15. Plaintiffs/debtors request that the Court enter an order pursuant to 11 U.S.C. §543 requiring the defendant to turnover to the debtors pursuant to the terms of the Agreement any property to which the defendant would otherwise be entitled if the Agreement were to be repudiated and the defendant were to receive TeamBank's portion of the tax refund contrary to terms of the Agreement.

## COUNT II: VIOLATION OF THE AUTOMATIC STAY

16. The allegations made in paragraphs 1 through 10, above, are alleged herein again as if fully set forth.

17. As of May 7, 2009, the FDIC was aware of and had actual knowledge that the plaintiffs/debtors had filed these Chapter 11 proceedings and that such bankruptcy proceedings were pending in this Court.

18. Pursuant to 11 U.S.C. §362(a)(3), the commencement of a petition under Title 11 of the U.S. Code operates as a stay, applicable to all entities, including, but not limited to the defendant in this case, of any act to obtain possession of property of the estates or of property from the estates or to exercise control over property of the estates.

19. The Repudiation Letters sent by the defendant to the plaintiffs/debtors herein, violate the automatic stay. The Repudiation Letters constitute an attempt by the defendant to obtain possession of property of the estates or property from the estates or to exercise control over the property of the estates contrary to the strictures imposed by 11 U.S.C. §362(a)(3).

20. The plaintiffs/debtors request that the Court enter an order (a) enjoining the FDIC from taking possession of property of the bankruptcy estates by repudiating the Agreement, (b) entering appropriate sanctions against the FDIC for violating the automatic stay, and (c) for such other relief as the Court deems appropriate.

WHEREFORE, the plaintiffs pray that the Court grant the above relief and such other and further relief as the Court deems just and equitable.

REDMOND & NAZAR, L.L.P.

 s/ W. Thomas Gilman
W. Thomas Gilman, #11867
245 N. Waco, Suite 402
Wichita, Kansas 67202
316-262-8361 / 316-263-0610 fax
wtgilman@redmondnazar.com
Attorneys for the Debtors

# TAX ALLOCATION AGREEMENT

THIS TAX ALLOCATION AGREEMENT (the "Agreement") is entered into by and among an affiliated group of corporations. (as referred to in "Exhibit A")

WHEREAS, the parties to this Agreement together constitute an affiliated group of corporations within the meaning of Section 1504(a) of the Internal Revenue code of 1986, as amended (the "Code");

WHEREAS, the parties to this Agreement will file consolidated income tax returns pursuant to Section 1501 of the Code;

WHEREAS, the parties to this Agreement wish to establish a method for allocating the consolidated Federal Income Tax Liability of the Group (as hereinafter defined) amount its Members (as hereinafter defined), reimbursing Team Financial, Inc. for payment of such tax liability, compensating each Member (as hereinafter defined) for use of its Net Operating Loss and tax credits and to in general preserve the economic rights and obligations which would accrue to each from the filing of separate federal income tax returns, all as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, IT IS HEREBY AGREED AS FOLLOWS:

I. <u>Definitions.</u> For purposes of this Agreement, the following terms shall be defined as follows:

(A) "Consolidated Return", "Affiliated Group", "Common Parent", "Member", "Net Operating Loss", "Earnings and Profits", "Alternative Minimum Tax", and "Carrybacks" shall have the respective meanings ascribed to them in the Code and the Regulations thereunder.

(B) The "Service" shall mean the Internal Revenue Service or its successor under any future federal income tax statute.

(C) "Federal Income Tax Liability" for a taxable period shall mean the liability for federal income tax (exclusive of any Alternative minimum Tax) for such taxable period together with any and all interest, additions to tax, fines, and penalties with respect thereto.

(D) The "Estimated Tax" for a taxable period shall mean the minimum payments, if any of estimated federal income tax which a corporation is required to make to avoid underpayment penalties for such taxable period under the Code, such requirements under current federal law being contained in Section 6655 of the Code.

(E) An "Estimated Tax Return" for a taxable period shall mean the form which, under the applicable federal income tax law, is required to accompany payments of estimated tax for such period, such form under current federal law being entitled "Federal Tax Deposit—Coupon (Form 8109)".

(F) The "Group" shall mean the Affiliated Group of which Team Financial, Inc. is the Common Parent.

1



(G) A "Taxable Year" shall have the meaning ascribed to it in the Code, including any short taxable period ending on the date of termination of this Agreement and any short taxable period of a Member of the Group included in the Group's Consolidated Return due to its joining or departing the Group.

(H) For purposes of intercompany tax payments, as well as payments to the Service, Team Financial, Inc. may designate any member of the Group as its agent.

II. <u>Term.</u> This Agreement shall be effective for the Taxable Year beginning January 1, 2005, and shall continue in effect until terminated as hereinafter provided.

III. <u>Filing of Consolidated Return and Payment of Tax.</u> For each Taxable Year during the term of this Agreement, Team Financial, Inc. shall file a Consolidated Return and Estimated Tax Returns on behalf of the Group, all of which shall be filed on a timely basis. For each Taxable Year during the term of this Agreement, Team Financial, Inc. shall pay the Federal Income Tax Liability of the Group, including Estimated Tax payments, all on a timely basis. Each Member of the Group shall execute and file such consents, elections, and other documents which may be required or appropriate for the proper filing of such returns.

IV. <u>Allocation of Tax Liability.</u> The Members of the Group shall allocate their Federal Income Tax Liability in the following manner:

(A) (i) During the term of this Agreement, the Federal Income Tax Liability of each Member of the Group shall be calculated as if such Member were filing a separate federal income tax return for the Taxable Year of such Member included in the Group's Consolidated Return (such amount hereinafter referred to as the "Separate Return Liability" of each Member).

(ii) In computing each Member's Separate Return Liability:

(a) The separate taxable income of each Member shall be determined in accordance with the provisions of the Code relating to the determination of taxable income of separate corporations and without the modification provided by Regulation § 1.1502-12: provided, however, that transactions with respect to stocks, bonds, or other obligations of Members shall be reflected according to the provisions of Regulation § 1.1502-14 and gain or loss on intercompany transactions between Members, whether deferred or not, shall be treated by each Member in the manner required by Regulation § 1.1502-13.

(b) Limitations on the utilization of a deduction or credit shall be made on a consolidated basis. Accordingly, the limitations provided in Section 38, 41,42,51,53, 170(b)(2) and 179(b)(1) of the Code and similar limitations shall be applied on a consolidated basis.

(c) The amounts in each taxable income bracket set forth in Section 11(b) of the Code shall be allocated in any given year to the Members of the Group as Team Financial, Inc. shall elect provided, however, that the amount allocated to any Member shall not exceed said Member's separate taxable income as computed hereunder. Such election shall be made on an annual basis and shall be binding upon all parties to this Agreement.

2

(d) The $25,000 limitation provided for in Section 38(c) of the Code shall be allocated in any given year to those Members of the Group as Team Financial, Inc. shall elect.

(e) In calculating any carryback or carryover of Net Operating Losses, adjustments shall be made to such prior or subsequent year's Separate Return Liability as determined under Section 172(b)(1) and 172(b)(2) of the Code. For purposes of this calculation, the election under Section 172(b)(3) of the Code shall be made on a separate company basis.

(f) The separate taxable income of each Member shall not include any portion of a Net Operating Loss sustained in a prior or subsequent year which had been absorbed by the Group or by such Member in determining the Federal Income Tax Liability of the Group or such Member for prior or subsequent years.

(B) Each Member of the Group shall pay to Team Financial, Inc. such amounts as are equal to its own Estimated Tax computed as if the member had continued to file separate returns. Said amounts shall be payable on the same date as Team Financial, Inc. pays the Estimated Tax installment for the Group. The excess (if any) of the amount paid by the Members to Team Financial, Inc. over the amount remitted by Team Financial, Inc. to the depository bank as an Estimated Tax payment for the Group shall be distributed by Team Financial, Inc. among those Members anticipating a Net Operating Loss by a method consistent with Section 4(c)(iii) hereof, which distribution shall be considered as a partial advance of their respective income tax benefit for such year. Notwithstanding anything else contained herein to the contrary, the Members may transfer to Team Financial, Inc. and Team Financial, Inc. may deposit with a depository bank, as Estimated Tax payments, a lesser amount than that calculated in accordance with an exception to the underpayment penalty as provided in section 1(d) hereof when in the judgment of Team Financial, Inc. such lesser amount more accurately reflects the anticipated actual tax liabilities for the year. Notwithstanding anything contained herein to the contrary, any payment that is required by this Agreement (including, without limitation, Sections 4(b) or 4(c)) to be made to or by Team Financial, Inc. may be made to or by any other Member (for example, a second tier holding company) as and to the extent permitted by Team Financial, Inc. provided the net economic effect of this Agreement may not be altered thereby.

(C) (i) Each Member of the Group shall pay to Team Financial, Inc. an amount equal to the excess, if any, of such Member's separate Return Liability over the amount of Estimated Tax previously paid by such Member to Team Financial, Inc. with respect to said Taxable Year.

(ii) Team Financial, Inc. shall pay to each Member of the Group an amount equal to the sum of:

(a) The excess, if any, of Estimated Tax previously paid by such Member to Team Financial, Inc. with respect to said Taxable Year over the Member's Separate Return liability; plus

3

(b) The federal income tax refund to which the Member would have been entitled by reason of any Carryback of consolidated Net Operating Less, unused credit or similar available Carryback items, if the Member had been filing separate return.

(iii) Team Financial, Inc. shall pay to each Member with a Net Operating Loss or tax credits with respect to a Taxable Year its allocable share of the aggregate amounts paid by the Member to Team Financial, Inc. with respect to such Taxable Year. Such payments shall be made on the date the Group's Consolidated Return is filed; provided, however, that to the extent such allocable share is attributable to a Carryback, such payments shall be made within 30 days of Team Financial, Inc.'s receipt of appropriate federal income tax refunds due to the Carryback. The allocable share of a Member pursuant to this Section 4 (c)(iii) shall be determined by Team Financial Inc. pursuant to a consistent method which reasonably reflects the tax benefit derived by the Group from the items of Net Operating Less and tax credits of such Member.

(iv) Payments made under Section 4(c)(I) hereof shall be made on the date the Group's Consolidated Return is filed.

(v) Payments made under Section 4(c)(ii)(A) hereof shall be made on the date the Group's Consolidated Return is filed and payments made under Section 4(c)(ii)(B) hereof shall be made upon Team Financial, Inc.'s receipt of appropriate federal income tax refunds due to the Carryback.

(D) If the aggregate amount paid by the Members to Team Financial, Inc. with respect to a Taxable Year exceeds the sum of the consolidated Federal Income Tax Liability of the Group plus the aggregate amount paid by Team Financial, Inc. to the Members with respect to such Taxable Year, Team Financial, Inc. shall retain such excess received as compensation for its Net Operating Loss and tax credits. If the aggregate amount paid by the Members to Team Financial, Inc. with respect to a Taxable Year is less than the sum of the consolidated Federal Income Tax Liability of the Group plus the aggregate amount paid by Team Financial, Inc. to the Members with respect to such Taxable Year, such excess paid shall constitute the Separate Return Liability of Team Financial, Inc.

(E) If all or part of an unused consolidated Net Operating Loss or tax credit of the Group is allocated to a Member pursuant to the consolidated return regulations, and it is carried back or forward to a year in which such Member filed a separate income tax return or joined in filing a consolidated federal income tax return with another affiliated group, any refund or reduction in tax liability arising from the carryback or carryover, including interest thereon, shall be retained by such Member. If such refund or reduction goes to an entity other than the Member, such entity shall reimburse such amount to the Member.

(F) Team Financial, Inc. shall determine whether an election shall be made to not carryback any consolidated Net Operating Loss arising in a consolidated return year pursuant to Section 172(b)(3) (including any portion thereof allocated to a Member pursuant to this Agreement).

(G) If the adjustment of the consolidated Federal Income Tax Liability (including any item of income, deduction, or credits) of the Group arises, the respective liability of the Members hereunder shall be redetermined after giving full effect to said adjustment as if said

4

adjustment had been made a part of the original computation of Federal Income Tax Liability for each Member. Such an adjustment may arise out of an audit by the Service, the filing of an amended return, or the filing of a claim for refund. If any proposed adjustment becomes a disputed matter between Team Financial, Inc. and the Service, the redetermination of tax liabilities within the Group pursuant to this Agreement shall be made only after the dispute is resolved by: (1) settlement with the Service, or (2) a decision of a court of competent jurisdiction coupled with no further appeal thereof. Upon the redetermination of tax allocation of the Federal Income Tax liability among the Members pursuant to this Section 4(g), each Member shall pay to Team Financial, Inc. its share of the increased Federal Income Tax Liability or Team Financial, Inc. shall pay to each Member its share of the reduced Federal Income Tax Liability as applicable.

   (H) The consolidated Alternative Minimum Tax, if any, and the consolidated alternative Minimum Tax credit carryforward, if any, for a Taxable Year, together with any and all interest, fines, and penalties with respect thereto, shall be allocated by Team Financial, Inc. among each Member of the Group on an equitable and consistent basis. Such allocation shall comply with the "Call Report Instructions" issued by the FFIEC or its successor, to the minimum extent possible.

V. <u>Deferred Income Tax</u>. No Member of the Group shall be required or permitted to make any transfers of funds to Team Financial, Inc. with respect to such Member's deferred income taxes.

VI. <u>Earnings and Profit Adjustments.</u> This agreement is not intended to establish the method by which the tax liability of the Group shall be allocated for purposes of determining Earnings and Profits of each Member of the Group. The parties hereto acknowledge that for the purposes of determining Earnings and Profits of each Member of the Group, the consolidated Federal Income Tax Liability of the Group will be apportioned among such Members in accordance with the method previously elected by the Group in accordance with Section 15523(a) of the Code if no such election has been made.

VII. <u>New Members.</u> If any state bank, national bank, or non-banking corporation becomes a Member of the Group later that the date of this Agreement, Team Financial, Inc. shall cause such new Member to become a party to this Agreement by causing such new Member to execute a copy of this Agreement whereupon such new Member shall have all the rights and obligations of a Member of the Group under this Agreement. Such new Member shall join in the filing of the Group's Consolidated Return commencing with the new Member's short Taxable Year which ends on the December 31st following the date on which it becomes a Member.

VIII. <u>Department Members.</u> If any Member of the Group ceases to be a Member of the Group, said Member shall thereafter not be a party to this Agreement. Except as provided by Section 11(e) below, said departing Member shall have no rights or obligations with respect to the Group or its Members and neither the Group or its Members shall have any rights or obligations with respect to the departing Members. Said departing Member, however, shall join in the filing of the Group's Consolidated Return with respect to the portion of such Taxable Year during which it was a Member and such departing Member's rights or obligations shall be determined under this Agreement with respect to said period.

IX. <u>Short Period of 30 Days or Less.</u> Notwithstanding anything else contained herein to the contrary, a new Member of the Group or a department Member of the Group may elect to be a

Member or a non-Member, as applicable, pursuant to the conditions contained in Regulation § 1.1502-76(b)(5)(I) and (ii), provided Team Financial, Inc. consents thereto in writing.

X. <u>Consolidated Kansas Tax Liability.</u> If any Member of the Group join in filing a consolidated Kansas Income Tax Return, the consolidated Kansas Income Tax Liability shall be allocated by Team Financial, Inc. on an equitable and consistent basis similar to the manner of allocation provided herein with respect to Federal Income Tax Liability. Payments of any Kansas Income Tax, including estimated tax payments, shall be made in a manner similar to the method of payment of Federal Income Tax Liability and Estimated Tax provided herein. Any banking member shall file its own Kansas Franchise Tax return, as required by laws of the State of Kansas.

XI. <u>Miscellaneous.</u>

(A) The construction, interpretation, validity and performance of this Agreement shall be governed by the laws of the State of Kansas.

(B) The failure of any party hereto to enforce any provisions of this Agreement shall not be construed to be a waiver of such provisions or of its right thereafter to enforce the same, and no waiver of any breach shall be construed as an agreement to waive any subsequent breach of the same or other provisions.

(C) This agreement contains the entire agreement among the parties hereto with respect to the subject matter hereof. No prior or collateral representations, understandings, promises or conditions with respect to the subject matter hereof not incorporated herein shall be binding upon the parties.

(D) No modification or termination of any of the provisions contained herein shall be binding upon any party hereto, unless made in writing and signed by all of the then Members of the Group.

(E) Notwithstanding anything else contained herein to the contrary, the termination of this Agreement or the departure of a Member from the Group shall not: (1) eliminate or otherwise affect the rights and obligations arising under this Agreement prior to the date of such termination or departure; or (2) eliminate any Member's or former Member's right or obligation under Section 4(g) hereunder with respect to adjustments which occur after the date of termination or date of departure, regardless of when such adjustment is first proposed.

(F) Notwithstanding any other provision of this Agreement, the rights and obligations of the parties hereto shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

(G) Any amendments, additions, or deletions in the Code or the regulations thereunder shall automatically be applicable to this Agreement.

IN WITNESS WHREOF, the parties to this Agreement have executed this Tax Allocation Agreement as of the dates set forth, (as referred to in "Exhibit A")

## "Exhibit A"

**Team Financial, Inc.**

_____     1/2/08
Chief Executive Officer          Date

**Team Financial Acquisition Subsidiary, Inc.**

_____     1/2/08
Chief Executive Officer          Date

**Post Bancorp, Inc.**

_____     1/2/08
Chief Executive Officer          Date

**TeamBank, N.A.**

_____     1/2/08
President, Chief Executive Officer          Date

**TeamBank, N.A. Asset Corporation**

_____     1/2/08
President          Date

**TBNA Holdings, LLC**

_____     1/2/08
Manager          Date

**TBNA REIT, LLC**

_____     1/2/08
Manager          Date

**Colorado National Bank**

_____     1/2/08
Vice-Chairman          Date

G:\Shared\Corp Goverance\Corp Documents and reports\Subsidiary Agreements\Tax Allocation Agreement - 2008 .doc

Exhibit A

# TFIN CORPORATE ORGANIZATION



December 31, 2007

# FDIC

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

May 7, 2009

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RECEIPT NO. 71054522644104372632

Team Financial, Inc.
2-8 West Peoria Street
Paola, KS 66071

Subject:  10046 – Team Bank, N.A.
Paola, Kansas – In Receivership
Closing Date: March 20, 2009
<u>Claims Bar Date: Ninety Days from the Date of this Letter</u>
Repudiation of that certain Tax Allocation Agreement, executed January 2, 2008, among Team Financial, Inc., Team Financial Acquisition Subsidiary, Inc., Post Bancorp, Inc., Team Bank, N.A., Team Bank, N.A. Asset Corporation, TBNA Holdings, LLC, TBNA REIT, LLC, and Colorado National Bank (the "Agreement")

Dear Sir or Madam:

The above-captioned depository institution (the "Institution") was closed on the Closing Date referenced above and the Federal Deposit Insurance Corporation was appointed as receiver of the Institution (the "Receiver"). Under the laws of the United States, the Receiver is charged with the duty of winding up the affairs of the Institution. In order to achieve this goal, the Receiver is given the right under 12 U.S.C. Section 1821(e) to repudiate undertakings entered into by the Institution where it finds such undertakings to be burdensome and where such repudiation will promote the orderly administration of the Institution's affairs.

The Institution's records indicate that the Institution is a party to the Agreement. The Receiver has determined that the Agreement is burdensome and that disaffirmance of the Agreement will promote the orderly administration of the Institution's affairs. The purpose of this letter is to inform you that the Receiver has elected to disaffirm the Agreement to the full extent, if any, that it represents an enforceable obligation or obligations of the Institution or the Receiver. This disaffirmance shall affect only an obligation or obligations of the Institution or the Receiver, and is not disaffirmance on behalf of other parties to the Agreement.

You may determine that the Receiver's decision to disaffirm the Agreement gives you a claim against the receivership estate. If so, you must file a Proof of Claim form with the Receiver no later than ninety (90) days from the date of this letter. A Proof of Claim form may be obtained by contacting Claims Agent GTC at the above address or by phone at (972) 761-8676.



EXHIBIT 2

Team Financial, Inc.
May 7, 2009

      Under federal law, with certain limited exceptions, failure to file claims by the Claims Bar Date will result in disallowance by the Receiver, the disallowance will be final, and further rights or remedies with regard to claims will be barred.

      If you have any questions concerning any of the matters discussed above, you may contact the Receiver at the address provided.

                                       Federal Deposit Insurance Corporation,
                                       as Receiver of Team Bank

                                       By: James A. Meyer
                                       Receiver in Charge

cc:     Claims Agent GTC
          Legal Dept: Jay Thomas

2

Case 09-05084    Doc# 1    Filed 05/22/09    Page 15 of 19

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

May 7, 2009

CERTIFIED MAIL
RETURN RECEIPT REQUESTED      3
RECEIPT NO. 7105452264410437266

Team Financial Acquisition Subsidiary, Inc.
c/o Team Financial, Inc.
2-8 West Peoria Street
Paola, KS 66071

Subject:   10046 – Team Bank, N.A.
Paola, Kansas – In Receivership
Closing Date: March 20, 2009
<u>Claims Bar Date: Ninety Days from the Date of this Letter</u>
Repudiation of that certain Tax Allocation Agreement, executed January 2, 2008, among Team Financial, Inc., Team Financial Acquisition Subsidiary, Inc., Post Bancorp, Inc., Team Bank, N.A., Team Bank, N.A. Asset Corporation, TBNA Holdings, LLC, TBNA REIT, LLC, and Colorado National Bank (the "Agreement")

Dear Sir or Madam:

The above-captioned depository institution (the "Institution") was closed on the Closing Date referenced above and the Federal Deposit Insurance Corporation was appointed as receiver of the Institution (the "Receiver"). Under the laws of the United States, the Receiver is charged with the duty of winding up the affairs of the Institution. In order to achieve this goal, the Receiver is given the right under 12 U.S.C. Section 1821(e) to repudiate undertakings entered into by the Institution where it finds such undertakings to be burdensome and where such repudiation will promote the orderly administration of the Institution's affairs.

The Institution's records indicate that the Institution is a party to the Agreement. The Receiver has determined that the Agreement is burdensome and that disaffirmance of the Agreement will promote the orderly administration of the Institution's affairs. The purpose of this letter is to inform you that the Receiver has elected to disaffirm the Agreement to the full extent, if any, that it represents an enforceable obligation or obligations of the Institution or the Receiver. This disaffirmance shall affect only an obligation or obligations of the Institution or the Receiver, and is not disaffirmance on behalf of other parties to the Agreement.

You may determine that the Receiver's decision to disaffirm the Agreement gives you a claim against the receivership estate. If so, you must file a Proof of Claim form with the Receiver no later than ninety (90) days from the date of this letter. A Proof of Claim form may be obtained by contacting Claims Agent GTC at the above address or by phone at (972) 761- 8676.

Team Financial Acquisition Subsidiary, Inc.
May 7, 2009

    Under federal law, with certain limited exceptions, failure to file claims by the Claims Bar Date will result in disallowance by the Receiver, the disallowance will be final, and further rights or remedies with regard to claims will be barred.

    If you have any questions concerning any of the matters discussed above, you may contact the Receiver at the address provided.

                                           Federal Deposit Insurance Corporation,
                                           as Receiver of Team Bank

                                           By: James A. Meyer
                                           Receiver in Charge

cc:    Claims Agent GTC
       Legal Dept: Jay Thomas

2

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

May 7, 2009

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RECEIPT NO. 71054522644104372515

Post Bancorp, Inc.
c/o Team Financial, Inc.
2-8 West Peoria Street
Paola, KS 66071

Subject: 10046 – Team Bank, N.A.
Paola, Kansas – In Receivership
Closing Date: March 20, 2009
<u>Claims Bar Date: Ninety Days from the Date of this Letter</u>
Repudiation of that certain Tax Allocation Agreement, executed January 2, 2008, among Team Financial, Inc., Team Financial Acquisition Subsidiary, Inc., Post Bancorp, Inc., Team Bank, N.A., Team Bank, N.A. Asset Corporation, TBNA Holdings, LLC, TBNA REIT, LLC, and Colorado National Bank (the "Agreement")

Dear Sir or Madam:

The above-captioned depository institution (the "Institution") was closed on the Closing Date referenced above and the Federal Deposit Insurance Corporation was appointed as receiver of the Institution (the "Receiver"). Under the laws of the United States, the Receiver is charged with the duty of winding up the affairs of the Institution. In order to achieve this goal, the Receiver is given the right under 12 U.S.C. Section 1821(e) to repudiate undertakings entered into by the Institution where it finds such undertakings to be burdensome and where such repudiation will promote the orderly administration of the Institution's affairs.

The Institution's records indicate that the Institution is a party to the Agreement. The Receiver has determined that the Agreement is burdensome and that disaffirmance of the Agreement will promote the orderly administration of the Institution's affairs. The purpose of this letter is to inform you that the Receiver has elected to disaffirm the Agreement to the full extent, if any, that it represents an enforceable obligation or obligations of the Institution or the Receiver. This disaffirmance shall affect only an obligation or obligations of the Institution or the Receiver, and is not disaffirmance on behalf of other parties to the Agreement.

You may determine that the Receiver's decision to disaffirm the Agreement gives you a claim against the receivership estate. If so, you must file a Proof of Claim form with the Receiver no later than ninety (90) days from the date of this letter. A Proof of Claim form may be obtained by contacting Claims Agent GTC at the above address or by phone at (972) 761- 8676.

Post Bancorp, Inc.
May 7, 2009

      Under federal law, with certain limited exceptions, failure to file claims by the Claims Bar Date will result in disallowance by the Receiver, the disallowance will be final, and further rights or remedies with regard to claims will be barred.

      If you have any questions concerning any of the matters discussed above, you may contact the Receiver at the address provided.

                                       Federal Deposit Insurance Corporation,
                                       as Receiver of Team Bank

                                       *James A. Meyer*
                                       By: James A. Meyer
                                       Receiver in Charge

cc:    Claims Agent GTC
        Legal Dept: Jay Thomas

2