**SO ORDERED.**

**SIGNED this 7th day of February, 2013.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TEAM FINANCIAL, INC., | ) | Case No. 09-10925 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| TEAM FINANCIAL ACQUISITION | ) | Case No. 09-10926 |
| SUBSIDIARY, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| POST BANCORP, INC., | ) | Case No. 09-10927 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| TEAM FINANCIAL INC., TEAM FINANCIAL, | ) | |
| ACQUISITION SUBSIDIARY, INC., and POST | ) | |
| BANCORP, INC., | ) | |

-1-

|                              |   |                        |
|------------------------------|---|------------------------|
| **Plaintiffs,**              | ) |                        |
| vs.                          | ) | **Adversary No. 09-5084** |
|                              | ) |                        |
| **FEDERAL DEPOSIT INSURANCE** | ) |                        |
| **CORPORATION,**             | ) |                        |
|                              | ) |                        |
| **Defendant.**               | ) |                        |

### ORDER SUSTAINING PLAINTIFFS' OBJECTION TO ADMISSION OF EXPERT TESTIMONY PROFFERED BY THE FDIC

The plaintiffs are bank holding companies and members of a consolidated tax group. They filed this adversary proceeding to determine whether tax refunds generated by certain consolidated tax returns are property of the bankruptcy estates under the 2008 Tax Allocation Agreement (TAA) and whether those refunds are subject to turnover.[1] The FDIC contends that as the receiver of the failed banks once owned by the holding companies, it is entitled to recover the tax refunds as property of the banks. During pretrial proceedings, the FDIC designated two attorneys as expert witnesses whose opinions are proffered regarding the proper interpretation of the TAA.[2] The debtors object to the admission of that expert testimony.[3] The proffered opinions are legal opinions on matters within the competence of the Court as the trier of law and are therefore inadmissible as expert opinions.[4]

---

[1] The 7-page TAA executed January 2, 2008 is attached to plaintiffs' adversary complaint. Adv. Dkt. 1.

[2] Adv. Dkt. 100.

[3] Adv. Dkt. 109.

[4] The debtor bank holding companies are represented by W. Thomas Gilman of Redmond & Nazar, L.L.P, Wichita, Kansas. For ease of reference in this Order, the debtors will be collectively referred to as "Team Financial." The FDIC, as Receiver for failed banks

Jurisdiction

A proceeding for turnover of property of the bankruptcy estate is a core proceeding over which this Court has subject matter jurisdiction.[5]

Brief Procedural History

In March of 2009, the FDIC was appointed Receiver for debtors' failed banks. The debtors filed separate chapter 11 petitions on April 5, 2009 and commenced this adversary proceeding on May 22, 2009.[6] During the pendency of this litigation, the parties agreed that plaintiffs would file the necessary tax returns and any tax refunds collected would be held in a segregated bank account, pending a determination of the parties' respective interests therein. Debtors have filed their disclosure statement and chapter 11 plan of liquidation; the tax refunds at issue are the primary asset of the bankruptcy estates and an evidentiary hearing on confirmation will be deferred until this adversary is resolved.[7]

FDIC moved for partial summary judgment early on, contending that under the TAA as interpreted in light of Treas. Reg. § 1.1502-77,[8] Team Financial holds the tax refunds as agent or trustee for the consolidated tax group and for the benefit of the affiliated entities, and thereby has

---

TeamBank N.A. and Colorado National Bank, is represented by Paul M Hoffmann of Stinson Morrison Hecker, LLP, Kansas City, Missouri and Michael E. Tucci, Stinson Morrison Hecker, LLP, Washington D.C.

[5] *See* 28 U.S.C. § 157(b)(2)(A) and (E), § 157(b)(1) and § 1334(b).

[6] The Court ordered the debtors' cases to be procedurally consolidated and jointly administered.

[7] *See* Dkt. 484 and 485. A non-evidentiary hearing on confirmation will be held February 12, 2013.

[8] 26 C.F.R. § 1.1502-77 (2007).

-3-

nothing more than bare legal title to the funds, effectively excluding them from Team Financial's bankruptcy estate by operation of 11 U.S.C. § 541(d). In a Memorandum Opinion issued April 27, 2010, the Court rejected the FDIC's position and denied the motion.[9] During discovery, the FDIC designated two expert witnesses to opine on the meaning of the TAA. The Team Financial plaintiffs objected.[10] Discovery is completed, the final pretrial order was entered on December 4, 2012, and the matter is set for trial beginning on March 4, 2013.[11]

Analysis

The FDIC's two proposed expert witnesses are attorneys who are unquestionably leaders in the fields of taxation and banking law. They propose to testify about how the TAA should be interpreted in light of the statutory and regulatory background against which it was drafted and in which banks and their holding companies operate.[12] Andrew Dubroff's report addresses numerous ambiguities in the TAA and not only how those ambiguities might be resolved in interpreting and applying the agreement, but also what the he believes the intent of the drafters and parties to the agreement to have been. My review of the report indicates that Mr. Dubroff did not review any deposition testimony of the drafters of the TAA or the principals of the parties to the agreement in

---

[9] Adv. Dkt. 48.

[10] Adv. Dkt. 109. Attached to Team Financial's objection are the expert reports of Andrew Dubroff of Ernst & Young, LLP, Washington D.C., and Paul Allan Schott of Watkins Consulting, Inc., also located in Washington D.C. *See* Dkt 109-1 and 109-2.

[11] Adv. Dkt. 106.

[12] *See* Adv. Dkt. 109-1, pp. 1-3, 26-27 for Mr. Dubroff's qualifications, education, and experience in the field of consolidated tax groups and tax law, regulations, and policy, and Adv. Dkt. 109-2, pp. 1-2, 23 for Mr. Schott's qualifications, education and experience in the field of banking and bank regulations and tax policy.

-4-

preparing his expert report and reaching his conclusions.[13] He concluded that the parties to the TAA surely intended that it not grant Team Financial powers beyond those of a "procedural agent" in connection with the group's consolidated tax returns and refunds.

Peter Schott's report indicates that he would testify about the bank regulatory and supervisory structure against which TAAs in general should be viewed and how this agreement should be interpreted in the context of an Interagency Policy Statement on income tax allocation in a consolidated income tax return setting.[14] Mr. Schott would testify that the TAA should not be interpreted in a way that would grant Team Financial a substantial ownership interest in the refunds and that, if it does, the agreement violates various provisions of the banking law.

The ultimate issue in this proceeding is who owns the income tax refunds: the failed banks of whom FDIC is the receiver or the bankruptcy estates of the holding company. The terms of the TAA obligate the holding company to file consolidated returns and pay the income taxes for the consolidated bank group, being accountable to each member of the group for a portion of the refunds. The apportionment of the refunds is based upon what each group member's tax liability or refunds would be had each member filed a separate return. When the plaintiffs filed these chapter 11 cases, Team Financial was obligated to file the 2008 consolidated tax return for the group and to collect and distribute the refunds, if any, accordingly. It filed the returns and collected approximately $4.0 million in refunds. These funds are being held pending the outcome of this adversary proceeding and the hearing on confirmation of Team Financial's plan. The Court must determine what property interest in the refund, if any, the agreement confers on Team Financial or

---

[13] *See* Adv. Dkt. 109-1, pp. 3-4.

[14] 63 Fed. Reg. 64757 (Nov. 23, 1998).

whether it is simply a conduit to the member banks in the group.

Expert testimony is principally governed by Federal Rules of Evidence 702 and 704. Rule 702 states that –

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> © the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 704(a) replaced the former proscription on expert witnesses expressing an opinion about the ultimate issue in a case. That rule states –

> (a) In General--Not Automatically Objectionable. An opinion is not objectionable just because it embraces an ultimate issue.

But that rule does not mandate the admission of such testimony either. As Rule 704's Advisory Committee Notes suggest, Rule 702's requirement that the opinion help the trier of fact "to understand the evidence or determine a fact in issue" and Rule 403's exclusion of evidence that wastes time combine to "afford ample assurances against the admission of opinions which would merely tell the jury [or court] what result to reach . . . ." [15]

Applying Rule 702's requirements, I can safely conclude that both Messrs. Dubroff and Schott possess the requisite "knowledge, skill, experience, training, or education" to testify as

---

[15] *See also, Hygh v. Jacobs,* 961 F.2d 359, 364 (2nd Cir. 1992) (While Rule 704 does not define "ultimate issue" it is generally considered that ultimate issues must be factual and not legal.); *United States v. Oles,* 994 F.2d 1519, 1523 (10th Cir. 1993) (citing advisory committee's comments emphasizing that testimony on ultimate questions of law is not favored).

-6-

experts in this proceeding. But I am not convinced that their specialized knowledge will help me understand the *facts* of the case when the great bulk of their opinions are on *legal* matters that lie within the competence of the court and are better suited to briefing and argument. Nor do their reports suggest that their testimony is based upon sufficient facts or data mined from the discovery record. And while Rule 704 does not bar their ultimate conclusion testimony per se, neither does it obligate me to admit it.

The Tenth Circuit Court of Appeals has addressed the admissibility of attorney-expert opinions several times, most recently in *MCC Management of Naples, Inc. v. Int'l Bancshares Corp.*[16] That was a complex civil case involving, among other things, a dispute over whether certain parties were entitled to an excess basis deduction under the Internal Revenue Code. The district judge permitted a tax attorney to testify as an expert about various interpretations of the underlying agreement. The attorney had played no role in the agreement's negotiation or drafting. Relying on *Specht v. Jensen*,[17] the Tenth Circuit held that expert testimony "is proper 'if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.'"[18] In other words, a witness can refer to the law, but can't tell the jury how to apply it. In *MCC*, the witness testified to three possible interpretations of the agreement and what the implications of each of those was in the case, but told the jury that they should "bring to bear your own sort of reasons and based upon all of the testimony you have" in interpreting the agreement. The Circuit Court found the witness's testimony was helpful to a lay jury because "intricate

---

[16] 468 Fed. Appx. 816 (10th Cir. 2012).

[17] 853 F.2d 805 (10th Cir. 1988).

[18] 468 Fed. Appx. at 821.

-7-

arrangements and technical tax jargon were illuminated by his experience with FDIC-bank agreements and knowledge of industry custom, tax law, and authorities in the field."[19]

In *Specht*, on petition for rehearing, a divided court distinguished between expert testimony on issues of fact and that which "articulates the ultimate principles of law governing the deliberations of the jury."[20] In *Specht*, the attorney-expert made a day-long evidentiary presentation, commenting at length on the law and applying it to the facts of the case, yielding an "array of legal conclusions touching upon nearly every element" in the case.[21] The majority noted that jurors may believe an attorney witness to be more knowledgeable than the judge in a particular area of the law and that allowing attorney-expert evidence can detract from the trial process by escalating the number of attorney-experts presented, lengthening trials and making them more costly. But the majority also conceded that an attorney-expert witness could aid the trier of fact in understanding the facts in evidence even though the witness's references are couched in legal terms, but only where focused on a specific question of fact. What the witness cannot, however, is "define the legal parameters within which" the trier must find facts.[22]

In the present case, both of these experts seek to define those parameters. Their opinions refer at length to various statutory, regulatory, and advisory rules that govern banking and urge legal conclusions about how the TAA should be interpreted and what its legal effect is. These opinions are far more than otherwise helpful opinions that are couched in legal terms and directed to specific

---

[19] *Id.* at 822.

[20] 853 F.2d at 808.

[21] *Id.*

[22] *Id.* at 809.

-8-

factual questions. These opinions offer "an array of legal conclusions" about the ultimate issue in the case which is whether these plaintiffs have more than bare legal title to these refunds.

Whether property is part of a bankruptcy estate is first governed by section 541 of the Bankruptcy Code.[23] That section includes all legal and equitable interests of the debtor, but excludes those assets as to which the debtor holds only bare legal title. Determining the nature of the property interest requires recourse to applicable non-bankruptcy law including not only state law, but in this case, banking and tax law as well.[24] In denying summary judgment, I concluded that the TAA established no legal or technical trust duty on the part of the debtor holding companies. Likewise, I held that the TAA did not impose any express agency obligation in the TAA. In reaching those conclusions, I held that *as to that issue*, the agreement was unambiguous. I remain convinced that as to the duties of the group members to remit and refund taxes, the agreement is unambiguous. The means of calculating how much the parties owe each other may be ambiguous and, if it is, its explication may be aided by parol evidence offered by the parties to the agreement. What remains for me to determine at trial is whether the agreement should be interpreted as making the holding company the custodian of the refunds for the group members or whether the holding company merely owes them a monetary obligation and, if it does, how much is owed to whom.

Mr. Dubroff's proposed testimony on what the drafters of the agreement likely intended is based only upon his understanding of the regulatory environment in which they functioned and not any evidence of their actual stated intent. That testimony is speculative at best and inadmissible,

---

[23] 11 U.S.C. § 541.

[24] *Butner v. United States,* 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) (Property interests are created and defined by state law.). Here, the TAA is governed by Kansas law. *See* Adv. Dkt. 1, p. 11 – TAA, Section XI (A), p. 6.

particularly where the principals are listed as witnesses in the case. The question of the degree and extent to which the TAA is ambiguous is a question of law for the court.[25] Nor is testimony about what "typical" tax sharing agreements provide for in connection with procedural agency and related issues relevant when this agreement is, as Mr. Dubroff suggests, not "typical." The Court must interpret the document the parties signed, not the one that they (or unrelated third parties) should have signed or wish they had signed. Mr. Dubroff's legal opinions on the proper interpretation of the TAA in the tax law and regulatory context are essentially legal arguments more suitable to presentation by the FDIC's counsel.[26] They are not evidence.

Mr. Schott's testimony centers on the overall regulatory structure and how the TAA fits into that scheme. His opinion is essentially a legal brief that creates a legal context for the TAA. He concludes that if the agreement is interpreted as the holding company argues, it amounts to an unsafe and unsound banking practice and a sanctioned affiliate transaction. While that may be so, what ultimately matters in this proceeding is whether the agreement confers a substantial ownership interest on Team Financial that its creditors are entitled to have preserved as estate property. Unless the effect of the banking law is to somehow void such a transaction or the TAA – an argument as yet unmade here – that the transaction is sanctionable under the banking law may not change its

---

[25] *Eureka Water Co. v. Nestle Waters North America, Inc.,* 690 F.3d 1139 (10th Cir. 2012) (Whether a contract is ambiguous and therefore requires consideration of extrinsic evidence to clarify the ambiguity, is a question of law for the courts.); *MCC Management of Naples, Inc. v. Int'l Bancshares Corp., supra. See also, Siegel v. F.D.I.C. (In re IndyMac Bancorp, Inc.),* 2012 WL 1037481 (Bankr. C.D. Cal. Mar. 29, 2012).

[26] *See Roundy's Inc. v. N.L.R.B.,* 674 F.3d 638 (7th Cir. 2012) (Expert opinion regarding state property law amounted to legal arguments best presented in counsel's analysis, not expert opinion testimony; experts having that knowledge "can help counsel write the briefs and present oral argument.").

-10-

Case 09-05084   Doc# 120   Filed 02/07/13   Page 10 of 11

property law result. And, in any event, determining that question is a matter of law for the court to decide. Mr. Schott's opinion veers closely to being the "array of legal conclusions" that *Specht* disfavors. Like Mr. Dubroff's opinion, Mr. Schott's views are argument, not evidence.[27]

The use of non-percipient expert witnesses was barred in a very similar case, *In re Indymac Bancorp, Inc.*, in which the bankruptcy judge held that, having concluded a TAA to be unambiguous, she would not admit the testimony of experts about what the intent of the parties to that TAA may have been based upon their experience with similar agreements.[28] That judge also concluded that these witnesses' testimony was not relevant.[29] The subject matter of the proposed expert testimony that the FDIC offers here is virtually identical to that offered by the FDIC in *Indymac*, suffers from the same evidentiary infirmities, and must be consigned to the same fate.

The plaintiffs' objection to the FDIC's proffered expert testimony is SUSTAINED.

# # #

---

[27] *Id.*

[28] *Siegel v. F.D.I.C. (In re IndyMac Bancorp, Inc.),* 2012 WL 1037481 at *9-*11 (Bankr. C.D. Cal. Mar. 29, 2012) (bankruptcy court's Report and Recommendation subsequently adopted by the district court, *In re IndyMac Bancorp, Inc.*, 2012 WL 1951474 (C.D. Cal. May 30, 2012)).

[29] *Id.* (parol evidence is irrelevant where TAA is unambiguous). *See* Fed. R. Evid. 401 and 402.